IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARGARET ANTHONY, and all other persons similarly situated, ) ) ) Plaintiff, ) ) v. ) ) AMERICAN AIRLINES, INC. and ) ASSOCIATION OF PROFESSIONAL ) FLIGHT ATTENDANTS, ) ) Defendants. ) | 03 C 3681 Judge Ronald A Guzmán |

## MEMORANDUM OPINION AND ORDER

Plaintiff Margaret Anthony has sued American Airlines, Inc. ("American") and the Association of Professional Flight Attendants ("APFA") for discriminating against her and similarly situated persons in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA"), when they assigned her and others a seniority ranking pursuant to a seniority integration agreement after American purchased TWA's assets out of Chapter 11 bankruptcy. She alleges that her reduction in seniority caused her to be furloughed by American in 2002. This case is before the Court on Anthony's objections to Magistrate Judge Nan R. Nolan's Report and Recommendation ("R&R") in which she recommends that Anthony's motion for class certification be denied and the case be dismissed for lack of subject matter jurisdiction under Federal Rule of Civil Procedure ("Rule") 12(b)(1). For the following reasons, the Court adopts Magistrate Judge Nolan's R&R with modification, finds that Anthony lacks standing, and hereby dismisses this case.

## Facts

Plaintiff Margaret Anthony began working as a flight attendant for TWA in 1970. (Third Am. Compl. ¶ 11, R&R 2-3.) In January 2001, after several years of failing to make a profit, TWA entered into an agreement with American whereby American agreed to purchase substantially all of TWA's valuable assets in connection with TWA's planned Chapter 11 bankruptcy.[1] To accomplish the goal of the purchase agreement, American formed a wholly-owned subsidiary known as TWA-LLC. *Cooper*, 349 F. Supp. 2d at 498. On or about April 10, 2001, TWA flight attendants became employees of TWA-LLC, a transitory entity controlled by American that would cease to exist once the two airlines were fully integrated. *Id.* As of the date of the purchase agreement, TWA flight attendants were represented by the International Association of Machinists ("IAM"). *Id.* at 499.

The IAM's collective bargaining agreement ("CBA") with TWA in place at the time TWA filed for bankruptcy contained *Allegheny-Mohawk*[2] provisions which provide certain protection to employees affected by a merger of two airlines. *See Cooper*, 349 F. Supp. 2d at 499. "The *Allegheny-Mohawk* provisions in the CBA required TWA to insist that American agree to integrate the TWA flight attendant seniority lists under the standard process for fair and equitable integration established by the Civil Aeronautics Board in the *Allegheny-Mohawk Merger Case*." *Id.* (citation omitted).

---

[1] The R&R relied on facts supplied by two related cases, *Cooper v. TWA Airlines, LLC*, 349 F. Supp. 2d 495, 499-500 (E.D.N.Y. 2004), and *Bensel v. Allied Pilots Ass'n*, 271 F. Supp. 2d 616, 620 (D.N.J. 2003), *aff'd in part, rev'd in part*, 387 F.3d 298 (3d Cir. 2004), *cert. denied*, 544 U.S. 1018 (2005). The facts detailed here also rely in part on those cases.

[2] *See Allegheny-Mohawk Merger Case*, 59 C.A.B. 22, 31-40 (1971).

2

American's flight attendants at all relevant times were represented by APFA with the pertinent CBA between the two having been signed on September 12, 2001. (Def. Am. Airlines, Inc.'s Mem. Opp. Pl.'s Mot. Certify Cause as Representative Action ("American's Mem."), Ex. C, Agreement 1.) American's CBA with APFA did not contain *Allegheny-Mohawk* provisions and additionally did not allow American to adopt such provisions with regard to other flight attendants in the event of a merger. *See Cooper*, 349 F. Supp. 2d at 499. Thus, if the *Allegheny-Mohawk* provisions in the TWA flight attendants' labor contract remained in force, American would have been required to integrate the TWA flight attendant seniority list with the American flight attendant seniority list as required by the *Allegheny-Mohawk* provisions, an obligation that would be in direct conflict with its CBA with APFA. (R&R 3.)

Because of this conflict, American, as a condition of its purchasing TWA's assets, insisted on IAM's waiver of the *Allegheny-Mohawk* provisions. *Cooper*, 349 F. Supp. 2d at 499; *Bensel*, 271 F. Supp. 2d at 620. IAM initially refused to eliminate these provisions, and TWA filed a Section 1113 motion in the bankruptcy court seeking permission to abrogate all of TWA's CBAs then in effect. *Cooper*, 349 F. Supp. 2d at 499-500. However, on April 4, 2001 while the Section 1113 motion was still pending, TWA and IAM entered into a Transition Agreement in which IAM agreed to waive certain parts of the flight attendants' CBA with TWA, including the *Allegheny-Mohawk* provisions. *Id.* at 500. TWA-LLC agreed to recognize IAM as the bargaining representative of the same employees it represented at TWA as of the date of the closing of the purchase, subject to the National Mediation Board ("NMB") declaring American and TWA-LLC a single carrier under the Railroad Labor Act ("RLA"). *Id.* At that time, the bargaining terms and seniority dates covering Anthony and the other flight attendants remained

3

the same as they were with TWA. *Anthony v. Am. Airlines, Inc.*, No. 03 C 3681, 2004 WL 1102319, at *1 (N.D. Ill. May 10, 2004).

On December 17, 2001, APFA and American entered into an agreement known as the "Agreement on Seniority Integration and Related Matters" ("SIA") which would "take effect on the date TWA-LLC was merged into American and its flight attendants were placed on American's payroll, provided the [NMB] issued a single carrier declaration and APFA was certified to be the exclusive [collective bargaining] representative for the combined group of flight attendants." (R&R 5); *Anthony*, 2004 WL 1102319, at *1. APFA filed an application seeking a declaration from the NMB that American and TWA-LLC were a single carrier under the RLA for purposes of collective bargaining. *Cooper*, 349 F. Supp. 2d at 501. On March 19, 2002, the NMB ruled that American and TWA-LLC were a single carrier for collective bargaining purposes, and the SIA became effective. *Id.* On April 19, 2002, APFA became the representative for attendants employed by TWA-LLC. *Id.*

The former TWA flight attendants were placed on American's payroll on flight attendant status effective January 1, 2002. (R&R 5.) The SIA provided an occupational seniority date of April 10, 2001 (the date of purchase) for all former TWA flight attendants, which placed them at the bottom of the list of American flight attendants for purposes of bidding on most flights and, Anthony argues, for purposes of determining who may be furloughed during a layoff. *See Cooper*, 349 F. Supp. 2d at 501. For purposes of classification and company seniority dates, which determine longevity for pay purposes and vacation days, the SIA provided that the TWA flight attendants would "receive credit at American for their years of service at TWA and TWA-LLC." *Id.* The SIA determined the seniority of former TWA flight attendants *vis à vis* the flight attendants already employed by American. (R&R 5.) Anthony alleges that prior to the

4

implementation of the SIA, her occupational seniority number was 952, but afterwards, her number was 22,656. (Third Am. Compl ¶ 19.) Anthony alleges that as a result of her placement on the seniority list, she was among the flight attendants who were furloughed by American in July 2002. *Anthony*, 2004 WL 1102319, at *1.

Anthony then filed this lawsuit, alleging that American and APFA, by agreeing to the terms of the SIA, intentionally discriminated against her and other TWA flight attendants based on age and sex, in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000(e) and the ADEA. Anthony later voluntarily dismissed her Title VII claim with prejudice and added another ADEA count based on a disparate impact theory.[3] Then, Anthony moved to certify the class pursuant to section 16(b) of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. The Court referred the motion to Magistrate Judge Nolan. After considering the matter, Magistrate Judge Nolan recommended that the motion be denied and the case be dismissed for lack of subject matter jurisdiction because Anthony failed to establish the causation and redressability elements of standing. (R&R 2.)

## Discussion

Rule 72 provides for the referral of pretrial matters to a magistrate judge. FED. R. CIV. P. 72. Under this rule, the magistrate's order may be subject to review by a district court judge. *See id.* However, pursuant to 28 U.S.C. § 636(b)(1)(A), a motion for class certification may

---

[3]*But see Adams v. Ameritech Servs., Inc.*, 231 F.3d 414, 422 (7th Cir. 2000) ("[D]isparate impact is not a theory available to age discrimination plaintiffs in this circuit"); *Maier v. Lucent Techs., Inc.*, 120 F.3d 730, 735 n.4 (7th Cir. 1997); *EEOC v. Francis W. Parker Sch.*, 41 F.3d 1073, 1077-78 (7th Cir. 1994).

not be decided independently by a federal magistrate judge. 28 U.S.C. § 636(b)(1)(A). Accordingly, the district court has the authority to make the final determination on the motion, and must "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C).

Anthony has objected to Magistrate Judge Nolan's findings and recommendations regarding the denial of her motion for class certification based on lack of jurisdiction. Specifically, Anthony objects to Magistrate Judge Nolan's: (1) conclusion that she must prove that the loss of her TWA seniority was caused by the adoption of the SIA; (2) holding that she did not lose any competitive seniority *vis-a-vis* the American flight attendants when the SIA went into effect; (3) conclusion that there is no causal connection between defendants' adoption of the SIA and the fact that her competitive seniority does not take into account her years of service; (4) holding that if the SIA were voided, her rightful place on the seniority roster would be the date she became an employee of American and that a different date could not be negotiated; (5) statement that it makes no difference if American and APFA could have agreed to give her a seniority date that preceded her employment with American; (6) holding that the Court lacks authority to award Anthony a seniority date that precedes her employment with American; (7) assumption that the Court could not order the reinstatement of Anthony's level of seniority while working for TWA; and (8) failure to address other equitable remedies. After reviewing *de novo* the portions of the R&R to which Anthony objects, this Court ultimately agrees with Magistrate Judge Nolan that jurisdiction is lacking in this case.

In ruling on a Rule 12(b)(1) motion, the district court must accept as true all well-pleaded factual allegations and draw reasonable inferences in favor of the plaintiff. *Capitol Leasing Co. v. Fed. Deposit Ins. Corp.*, 999 F.2d 188, 191 (7th Cir. 1993). "The district court may properly

6

look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Grafon Corp. v. Hausermann*, 602 F.2d 781, 783 (7th Cir. 1979).

"The irreducible constitutional minimum of standing contains three elements." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

> First and foremost, there must be alleged (and ultimately proved) an injury in fact - a harm suffered by the plaintiff that is concrete and actual or imminent, not conjectural or hypothetical. Second, there must be causation - a fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant. Third, there must be redressability - a likelihood that the requested relief will redress the alleged injury. This triad of injury in fact, causation, and redressability comprises the core of Article III's case-or-controversy requirement, and the party invoking federal jurisdiction bears the burden of establishing its existence.

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103-04 (1998) (quotations omitted).

"Where standing is challenged as a factual matter, the plaintiff bears the burden of supporting the allegations necessary for standing with 'competent proof' .... [which requires] a showing by a preponderance of the evidence, or proof to a reasonable probability, that standing exists." *Retired Chi. Police Ass'n v. City of Chi.*, 76 F.3d 856, 862 (7th Cir. 1996).

**I. Injury**

Defendants, in opposing Anthony's motion for class certification, solely attacked the causation and redressability elements of standing. Neither party specifically addresses the injury element in their briefing regarding Anthony's objections. Nonetheless, the Court finds that Anthony has sufficiently alleged a concrete injury and satisfies the first requirement of standing. The injury of which Anthony complains is that she was furloughed from her job as an American

flight attendant as a result of her reduced seniority as dictated by the SIA, an agreement between American and APFA that she alleges discriminated against her and others based on age.

## II. Causation

To satisfy the second element of the standing requirement, there must be a fairly traceable connection between a plaintiff's injury and the complained-of conduct of the defendant. *Steel Co.*, 523 U.S. at 103. The "case or controversy" limitation of Article III requires that a federal court act only to redress injury that fairly can be traced to the challenged action of the defendant, and not injury that results from the independent action of some third party not before the court. *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976).

Anthony objects to Magistrate Judge Nolan's conclusion that her loss of TWA seniority was not fairly traceable to defendants' adoption of the SIA. Magistrate Judge Nolan held that Anthony did not lose her seniority rights when the SIA was adopted, but rather when IAM waived the *Allegheny-Mohawk* provisions. (R&R 11.) Anthony asserts that the waiver of the *Allegheny-Mohawk* provision merely relinquished TWA's contractual obligation to require American to afford Anthony her TWA seniority date and that the SIA is the instrument which set her seniority allegedly in violation of the ADEA. The Court agrees.

As previously noted, in the case of a merger between airlines, *Allegheny-Mohawk* provisions guarantee fair and equitable integration of seniority lists. *See Braniff Master Executive Council of the Air Line Pilots Ass'n Int'l v. Civil Aeronautics Bd.*, 693 F.2d 220, 222 n.2 (D.C. Cir. 1982). However, American's CBA with APFA did not contain *Allegheny-Mohawk* provisions and did not allow American to adopt provisions *vis-à-vis* other flight attendants in the event of a merger. American therefore made waiver of these provisions a

8

condition of its purchase of TWA. IAM, by voluntarily waiving these provisions, removed the protection previously afforded the TWA flight attendants under the terms of the CBA between IAM and TWA. When these provisions were eliminated, so too was the requirement that TWA ensure that American agree to integrate its seniority list as dictated by the *Allegheny-Mohawk* provisions.

But the fact that provisions *requiring* seniority integration in conformity with *Allegheny-Mohawk* were removed did not inevitably result in the allegedly discriminatory SIA entered into by American and APFA. This is the same conclusion that the Third Circuit reached in a case involving the American-TWA merger, *Bensel v. Allied Pilots Ass'n*, 387 F.3d at 305.

In *Bensel*, a class consisting of former TWA pilots appealed the District Court's grant of summary judgment to the defendants which included Allied Pilots Association ("APA"), the union representing American Pilots, Air Line Pilots Association ("ALPA"), the former TWA pilots' union, TWA and American. *Id.* at 301. The gravamen of the class' complaints, which arose under the Railway Labor Act, 45 U.S.C. §§ 151 *et seq.*, concerned the imposition of a seniority integration agreement resulting from American's purchase of TWA's assets and the hiring of the class by American's subsidiary, TWA-LLC. *Id.* As in the instant case, TWA's pilots, represented by ALPA, were required to waive their *Allegheny-Mohawk* rights in order for American's purchase of TWA's assets to proceed. *Id.* ALPA, through its TWA Master Executive Council ("TWA-MEC"), waived its seniority protection provision in exchange for a letter from American in which American promised to "use its reasonable best efforts" with APA to "secure a fair and equitable process for the integration of seniority" and to adopt the procedures that resulted from facilitated meetings between APA and ALPA. *Id.* at 302.

TWA-MEC and APA negotiated seniority integration under the auspices of a facilitator provided by American between at least February and August of 2001 without reaching an agreement. *Id.* However, APA and American reached an independent agreement on seniority integration of the former TWA pilots, known as Supplement CC on November 8, 2001, which TWA-MEC subsequently refused to sign. *Id.* at 302-03. Just as the SIA here, Supplement CC was not to become effective until the NMB declared American and TWA-LLC to be a single carrier. *Id.*

The district court in *Bensel* held:

> While Supplement CC did affect the TWA-LLC pilots, in reality it was an agreement between American and APA, affecting a change in the collective bargaining agreement between those two entities. The fact that American and APA were able to come to such an agreement without involving ALPA or the TWA-MEC is directly related to the TWA-MEC waiving the TWA-LLC pilots' seniority protections.

271 F. Supp. 2d at 625. However, on appeal, the Third Circuit disagreed, stating that "contrary to the District Court's and ALPA's position, Supplement CC was not the inevitable outcome of the April 2001 waiver of Appellants' *Allegheny-Mohawk* provisions." *Bensel*, 387 F.3d at 305.

Here, American made similar representations to IAM that it would "use its reasonable best efforts with its labor organizations representing . . . mechanics and flight attendants . . . to secure a fair and equitable process for the integration of seniority." *Cooper*, 349 F. Supp. 2d at 499. IAM relied on this commitment to engage a facilitator and relied on American's repeated representations that TWA-LLC flight attendants would receive benefits, including seniority status, that mirrored those provided to American flight attendants when it withdrew its objections to the purchase agreement in bankruptcy court. *Id.* at 499-500.

10

Despite this representation, the collective bargaining agreement between American and APFA in effect as of September 12, 2001 stated that "the combined seniority list of the two carriers for the Flight Attendants who are employed by the Company as part of the merger *shall be pursuant to a method to be determined by the APFA*." (American's Mem., Ex. C, Agreement 5 (emphasis added).) Further, the CBA stated "such combined seniority list integration shall not require a system flush and/or system rebid." *Id.* Under the terms of the CBA, APFA was to determine how the former TWA flight attendants would be integrated into American, which it did when it entered into the SIA with American on December 19, 2001. It was also on this date that American for the first time revealed that it had been engaging in integration talks with APFA without IAM's participation. *Cooper*, 349 F. Supp. 2d at 501. Although IAM objected to such discussions, American took the position that it had no obligation to allow IAM to participate in any seniority negotiations because under the American-APFA CBA, it was left to APFA to determine the seniority integration in the event American merged with another airline. *Id.*

Thus, IAM's waiver of the *Allegheny-Mohawk* provisions exposed the former TWA flight attendants to potentially unfavorable treatment in the seniority integration process with American. However, even after the waiver, it had not yet been determined how the two groups of flight attendants would be integrated. Although it was foreseeable how the two groups would potentially be integrated after the waiver, the discriminatory act of which Anthony complains had not yet occurred. It was not until defendants agreed to and implemented the SIA, which affixed an occupational seniority date to Anthony (and other former TWA flight attendants), that Anthony suffered alleged age discrimination.

11

In this Court's view, Anthony's alleged injury can be fairly traced to American and APFA's agreeing to the SIA. Accordingly, Anthony has satisfied her burden of establishing the causation element of standing.

### III. Redressability

Although Anthony's injury is fairly traceable to defendants' actions, the question of redressability still remains. "Relief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court; that is the very essence of the redressability requirement." *Steel Co.*, 523 U.S. at 107. "The question then is whether plaintiff's injury will likely be redressed by a favorable decision." *Harp Adver. Ill., Inc. v. Vill. of Chi. Ridge*, 9 F.3d 1290, 1292 (7th Cir. 1993). "A plaintiff who would have been no better off had the defendant refrained from the unlawful acts of which the plaintiff is complaining does not have standing under Article III of the Constitution to challenge those acts in a suit in federal court." *McNamara v. City of Chi.*, 138 F.3d 1219, 1221 (7th Cir. 1998).

Here, the remedies Anthony seeks either would leave her in a worse position than she would have been had there been no SIA or would be too speculative as to their outcome. Anthony has therefore failed to satisfy this standing requirement.

Pursuant to the ADEA, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). However, "the ADEA was not intended to legislate seniority rights where none exist in the contract of employment." *Tice v. Lampert Yards, Inc.*, 761 F.2d 1210, 1217 (7th Cir. 1985).

12

If the Court were to invalidate the allegedly discriminatory SIA as Anthony requests, then her right to a particular seniority date as a term, condition or privilege of her employment would have to be based on some other contractual right. In the absence of the SIA, the only other contract that might conceivably govern Anthony's seniority would be the American-APFA CBA.

Granting her a seniority date as provided in the American-APFA CBA would leave Anthony in a worse position than under the terms of the SIA and thus would not redress her injury. The SIA entered into by American and APFA assigned all former TWA flight attendants an occupational seniority date of April 10, 2001. The American-APFA CBA provides that "[s]eniority shall begin to accrue *from the date the Flight Attendant is placed on the Company's payroll on a Flight Attendant status*, from which date seniority shall continue to accrue during the Flight Attendant's period of service." (American's Mem. Ex. C, Agreement 190 (emphasis added).)[4] January 1, 2002 is the date on which Anthony was placed on American's payroll on flight attendant status. Thus, if Anthony's seniority date were dictated by the CBA instead of the SIA, the former TWA flight attendants' occupational seniority date would be January 1, 2002, rather than the April 10, 2001, leaving her with less seniority than under the SIA.

To be clear on this point, Anthony does not seek retroactive seniority as provided in any currently existing collective bargaining agreement, as did the plaintiffs in *Franks v. Bowman Transportation Co.*, 424 U.S. 747, 767 (1976), *Firefighters Local 1784 v. Stotts*, 467 U.S. 561, 576-77 (1984), and *Harper v. General Grocers Co.*, 590 F.2d 713, 715-16 (8th Cir. 1979). She asks the Court to nullify the purportedly discriminatory SIA, ignore (and ameliorate, for that

---

[4]The Court notes that Anthony does not contend that the American-APFA CBA's seniority system is discriminatory, unfair or not the result of good faith bargaining.

matter) IAM's waiver of *Allegheny-Mohawk* provisions, bypass the American-APFA CBA, and create an entirely new occupational seniority system that reflects the former TWA flight attendants' years of service with TWA. In her memorandum in support of her objections to the R&R, Anthony provides no case law to support that such a remedy is available in a case such as hers. The onus for establishing the redressability requirement of standing falls squarely on her, and she has failed to satisfy that burden.

Even if it were a possibility to order APFA and American to renegotiate an occupational seniority integration agreement under the law, the results of any such negotiation would be entirely too speculative to satisfy the redressability requirement of standing. It is uncertain that APFA and American if so ordered would create a seniority system that would vary in any significant degree to the integration design implemented via the SIA, or that Anthony would obtain a more favorable seniority date under the resulting system, such that she would not have been furloughed. Because APFA now represents the interests of both American flight attendants and former TWA flight attendants, it has a "statutory obligation to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct," *see McNamara-Blad v. Ass'n of Prof'l Flight Attendants*, 275 F.3d 1165, 1169 (9th Cir. 2002). Thus, if the Court were to require American and APFA to renegotiate terms of seniority for all of its flight attendants, APFA could not favor certain members in its bargaining unit (former TWA flight attendants) over others. It is uncertain that APFA would be capable of designing a seniority integration system that would redress Anthony's injury and provide the remedy she seeks. Accordingly, there is simply no way to state with any degree of certainty that any renegotiation would result in a new seniority integration system that would redress Anthony's injury.

## Conclusion

For the foregoing reasons, the Court adopts the R&R of Magistrate Judge Nolan with modification. The Court denies Anthony's motion for class certification and dismisses the complaint for lack of subject matter jurisdiction. This case is hereby terminated.

**SO ORDERED**  ENTERED: 9/27/06

*Ronald A. Guzman*
**HON. RONALD A. GUZMAN**
**United States Judge**